UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEON'DRE T. TOWNSEND,

                Plaintiff,

v.                                                Case No. 20-cv-1126-pp

SHERIFF EARNELL R. LUCAS,
and JOHN DOES,

                Defendants.

---

## ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE

---

Deon'dre T. Townsend, an inmate at Milwaukee County Jail who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. On October 29, 2020, the court screened the complaint and gave the plaintiff the opportunity to file an amended complaint. Dkt. No. 8. The court received the amended complaint on November 23, 2020. Dkt. No. 9. As required by the Prison Litigation Reform Act, which applies to this case because the plaintiff was incarcerated when he filed his complaint, the court will screen the plaintiff's amended complaint. 28 U.S.C. §1915(h); §1915A(a).

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

The court explained the federal screening standard in its original screening order, so it is not necessary to repeat the details of that standard in this decision. See Dkt. No. 8 at 2-3. To state a claim for relief under the federal

1

notice pleading standard, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015).

### B. The Plaintiff's Allegations

The plaintiff is an inmate at the Milwaukee County Jail. Dkt. No. 9 at 2. He is suing Sheriff Earnell Lucas and four John Doe Captains, who he says run the jail. Id. The plaintiff asserts that in December 2019, the jail failed to provide him and all other inmates with soap for nearly three weeks. Id. The plaintiff complained through the grievance system, but he says the defendants did nothing. Id.

The plaintiff also alleges that since March 2020, he and all other inmates are locked in their cells daily from 1:00 p.m. until 3:00 p.m. the next day, for a total of twenty-six consecutive hours. Id. at 2-3. He says the drinking water in his cell smells bad and tastes of lead, and the faucet is grime-filled and

2

corroded. Id. at 3. He also asserts that the cells do not have showers and the vents are dirty and dusty. Id. He says he is forced to eat most of his meals in his cell. Id. He says he is not even allowed to use the gym. Id.

According to the plaintiff, when he wrote grievances about being locked in for twenty-six or more hours, "they" (he does not specify who "they" is) responded by saying, "We apologize for the inconvenience and hinderance the altered daily schedule has caused," and "contrary to your belief the schedule was thought out [and] carefully crafted to deter the spread of COVID-19." Id. at 3-4. The plaintiff says the defendants have undermined these claims by not properly screening new and transferred inmates. Id. at 4. He explains that new and transferred inmates are placed directly into general population units. Id.

By way of example, the plaintiff alleges that in late October 2020, an inmate from the House of Correction was placed in his unit for less than a week. Id. He says the inmate was then transferred back to the House of Correction where he tested positive for COVID-19. Id. The plaintiff asserts that he was exposed to COVID-19, but he was not infected, even though he made contact with the infected inmate. Id.

The plaintiff further alleges that the defendants "[e]ncourage jail staff to ravage and ransack cells, and inmates['] personal belongings in monthly shakedowns, during which they go through inmates' legal work and discovery. Randomly run on pods and point mace canisters, spray guns, and tazer guns at inmates yelling lock-in." Id. at 3. The plaintiff says that inmates must

3

immediately run to their cells and lock-in, or jail staff will punish them with lock-in for as long as they see fit. Id.

The plaintiff asserts that not only do the defendants know about this alleged misconduct, they encourage it. Id. The plaintiff explains that he is innocent until proven guilty, and he should not be treated like a convicted felon in a max facility. Id. The plaintiff seeks $200,000 in damages for mental, emotional and physical stress and neglect. Id. at 4.

    C.    Analysis

The plaintiff alleges that various conditions and incidents—such as a lack of soap for three weeks; being confined to his cell for twenty-six hours straight; having to drink bad smelling and tasting water; having to immediately comply with orders to lock-in while staff point tasers, mace and spray guns at him; being exposed to COVID-19; and having his cell ransacked during monthly shakedowns—violated his constitutional rights. The plaintiff does not specify which staff members were responsible for each of these conditions and/or involved in each incident. The court doubts that the same staff members were responsible for all the alleged misconduct the plaintiff describes in his amended complaint.

The court explained in its original screening order that under Fed. R. Civ. P. 18 and 20, a plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Dkt. No. 8 at 9. Because different staff members

4

likely were involved in the different conditions/incidents the plaintiff describes in the amended complaint, the plaintiff could not join all those different claims in a single lawsuit. So, instead of suing the many officers directly involved in the underlying conditions/incidents, the plaintiff has sued the sheriff and a handful of unidentified captains who he says supervised the officers involved in the underlying conditions/incidents. The plaintiff alleges that the sheriff and officers not only knew about all of the officers' alleged misconduct but encouraged it.

A supervisor may be held liable for a subordinate's misconduct if the supervisor directs or consents to the misconduct. For example, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (quoting Jones v. City of Chi., 856 F.2d 985, 992 (7th Cir.1988)). Of course, for a supervisor to be liable for a subordinate's misconduct, there must be misconduct. That is, if the conditions/incidents the plaintiff complains about do not violate the Constitution, the Sheriff and supervising captains cannot be liable for turning a blind eye to or facilitating those conditions/incidents. See Carter v. Rosenbeck, 214 F. Supp. 2d. 889, 896-97 (C.D. Ill. 2002) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)) (other citations omitted).

The plaintiff states that he is a pretrial detainee, so in order to state a claim about the conditions of his confinement he must alleges facts supporting a reasonable inference that a condition was "objectively unreasonable" and

5

"excessive in relation to any legitimate non-punitive purpose." Hardeman v. Curran, 933 F.3d 816, 824 (7th Cir. 2019). Mere inconveniences or conditions that do not exceed "the general level of discomfort anyone can experience while in custody" will not be enough to state a claim. Id. at 824-25. Both the severity and the duration of the alleged condition are relevant to the court's analysis. Id. at 824. The court will evaluate each alleged condition/incident in turn.

1. *Lack of Soap*

The plaintiff complains that in December 2019, the jail failed to provide him with soap for nearly three weeks. Although the plaintiff does not explain why he was denied soap, it appears to have been a jail-wide problem as he asserts that staff denied him and "all other inmates" soap. Dkt. No. 9 at 2. The Seventh Circuit has held that in some situations, denying an inmate hygiene items can violate the Constitution. See, *e.g.*, Gillis v. Litscher, 468 F.3d 488, 490-91; 493 (7th Cir. 2006). Even assuming there was no legitimate penological reason for the denial (such as problems with a supplier), the court finds that the denial of soap for less than three weeks, without more, is insufficient to state a claim.

The plaintiff does not allege that he was denied access to showers, water in his cell or other hygiene products such as shampoo and deodorant, which may have been sufficient for him to stay adequately clean. He also does not allege that he suffered any injury or harm, such as rashes, sores or infections, as a result of temporarily not having soap. While it was no doubt

6

uncomfortable to go without soap for this period, this temporary inconvenience was not so unreasonable as to state a claim.

### 2. *Confined in Cell for Twenty-Six Hours*

The plaintiff asserts that, since March, he's been regularly confined in his cell for as many as twenty-six consecutive hours. Someone at the jail explained to the plaintiff that inmates are being confined in their cells for extended periods of time to control the spread of COVID-19. The challenges presented by COVID-19, a highly contagious virus that can cause potentially life-threatening symptoms, are numerous and complicated. Given how the virus is transmitted, one of the main precautions medical experts have advised is social distancing, which is nearly impossible in a jail. It appears that, in response to the COVID-19 threat, jail administrators have opted to severely restrict movement within the jail. Whoever responded to the plaintiff's grievance informed him that this decision was not made lightly.

Given the unique challenges jail administrators currently face and the requirement that courts accord substantial deference to the professional judgment of jail administrators, the court cannot reasonably infer that the decision to severely restrict inmates' movement is objectively unreasonable or excessive in relation to the purpose of keeping inmates safe and healthy. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (acknowledging that courts "must accord substantial deference to the professional judgment of prison administrators").

### 3. *Cell Conditions*

The plaintiff also alleges that he is not able to use the gym, he must eat most meals in his cell, the vent in his cell is dirty, there is grime on his sink faucet and the water tastes and smells bad. Jail staff are not allowing the plaintiff to use the gym or cafeteria in order to minimize the risk of spreading COVID-19. For reasons already explained, the court finds that these restrictions are not objectively unreasonable or excessive in relation to the purpose of keeping inmates safe and healthy. Many people who are *not* incarcerated are unable to use gyms or eat outside their homes. This is, unfortunately, the unpleasant reality of living in a pandemic.

As to the plaintiff's complaints about dirty vents, faucets and bad smelling and tasting water, the court finds that these are inconveniences and general discomforts that anyone who is incarcerated faces. As the U.S. Supreme Court long ago explained, "the Constitution does not mandate comfortable prisons . . . which . . . cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 350 (1981).

### 4. *Exposure to COVID-19*

The plaintiff alleges that he was exposed to COVID-19 when staff placed an inmate who had transferred from another institution in his housing unit. It's not clear that the transferred inmate had COVID-19 when he was placed on the plaintiff's unit; it may be that he became infected while he was on the unit or after he transferred back to the House of Correction. In any event, the plaintiff fails to state a claim because he was not injured as a result of living on

8

the same unit as the transferred inmate (the plaintiff clarifies that he was not infected). See, *e.g.*, Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020) (holding that the plaintiff's claim failed "on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort … without then developing evidence of a recoverable injury").

      5.    *Monthly Searches*

The plaintiff alleges that staff members conduct monthly searches of inmates' cells (he calls them shakedowns), look through inmates' legal documents, and run around pointing mace, tasers and spray guns at inmates while ordering them to lock in. The U.S. Supreme Court has acknowledged that, "[r]andom searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries." Hudson v. Palmer, 468 U.S. 517, 529 (1984) (quoting Marrero v. Commonwealth, 222 Va. 754, 757 (1981)).

The plaintiff does not necessarily take issue with the fact that these searches are conducted; he is more concerned with the way they are conducted. He makes the vague assertions that inmates' cells are "ravaged" and "ransacked" without explaining what he means by that. A thorough search of a cell may include moving items, opening storage containers, flipping through stacks of papers and perhaps stripping sheets from beds. But such procedures are necessary for jail staff to conduct an effective search. The plaintiff makes no allegations from which the court can reasonably infer that

staff members' methods are excessive given the purpose for which cell searches are conducted.

The plaintiff also asserts that staff members "randomly run on pods," pointing mace, tasers and spray guns at inmates while ordering them to lock-in. The plaintiff says that inmates must comply within thirty seconds or face punishment. Once again, the plaintiff seems to feel harassed and intimidated by the staff members' methods, but, as the U.S. Supreme Court has observed, "[j]ails are often crowded, unsanitary, and dangerous places. Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 332 (2012). There are many more inmates than there are staff members, and staff members have limited options for gaining inmates' compliance. Given security and safety concerns, it is objectively reasonable for staff members to present a show of force to gain immediate compliance from inmates and for staff members to discipline those inmates who fail to comply. The plaintiff makes no allegations from which the court can reasonably infer that staff members' methods (holding mace canisters, tasers, and spray guns while ordering inmates to comply) are excessive in relation to the purpose of gaining inmates' compliance. The court also cannot reasonably infer that disciplining inmates with additional lock-in time when an inmate fails to immediately comply with an order is objectively unreasonable.

The court cannot reasonably conclude that any of the conditions and/or incidents the plaintiff describes in his amended complaint violate the Constitution. And, because there is no underlying constitutional violation, the

10

Case 2:20-cv-01126-PP   Filed 12/07/20   Page 10 of 12   Document 10

staff members' methods are excessive given the purpose for which cell searches are conducted.

The plaintiff also asserts that staff members "randomly run on pods," pointing mace, tasers and spray guns at inmates while ordering them to lock-in. The plaintiff says that inmates must comply within thirty seconds or face punishment. Once again, the plaintiff seems to feel harassed and intimidated by the staff members' methods, but, as the U.S. Supreme Court has observed, "[j]ails are often crowded, unsanitary, and dangerous places. Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 332 (2012). There are many more inmates than there are staff members, and staff members have limited options for gaining inmates' compliance. Given security and safety concerns, it is objectively reasonable for staff members to present a show of force to gain immediate compliance from inmates and for staff members to discipline those inmates who fail to comply. The plaintiff makes no allegations from which the court can reasonably infer that staff members' methods (holding mace canisters, tasers, and spray guns while ordering inmates to comply) are excessive in relation to the purpose of gaining inmates' compliance. The court also cannot reasonably infer that disciplining inmates with additional lock-in time when an inmate fails to immediately comply with an order is objectively unreasonable.

The court cannot reasonably conclude that any of the conditions and/or incidents the plaintiff describes in his amended complaint violate the Constitution. And, because there is no underlying constitutional violation, the

plaintiff fails to state a claim against the sheriff and captains who allegedly supervised the officers responsible for those conditions and/or incidents.

### III. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed

within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 7th day of December, 2020.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**